DBF5tamS                              sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              S1 12 Cr. 615 (JPO)

5    AMIR ABBAS TAMIMI,

6              Defendant.

7    ------------------------------x

8
                                              November 15, 2013
9                                             10:15 a.m.

10
     Before:
11
                        HON. J. PAUL OETKEN,
12
                                              District Judge
13

14                            APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  JASON P.W. HALPERIN
17        ANDREA SURRATT
          Assistant United States Attorneys
18
     THE LAW OFFICES OF SAEID B. AMINI
19        Attorneys for Defendant
     BY:  SAEID BARADARAN AMINI
20

21

22

23

24

25

DBF5tamS                              sentence

1          (Case called)

2          THE DEPUTY CLERK:  Your Honor, this is in the matter

3   of United States of America versus Amir Tamimi.

4          Starting with the government, can I have counsel state

5   their appearance for the record, please?

6          MR. HALPERIN:  Good morning, your Honor.  Jason

7   Halperin and Andrea Surratt for the government.  With us at

8   counsel table is Special Agent David Balint of the FBI, Thomas

9   Smith of the Department of Commerce, and Matthew Fede of the

10  Department of Homeland Security.

11         THE COURT:  Good morning.

12         MR. AMINI:  Good morning.  Saeid Amini for defendant

13  Amir Tamimi.

14         THE COURT:  Good morning.

15         Please swear in the interpreter.

16         (Interpreter sworn)

17         THE COURT:  We are here today for the imposition of

18  sentencing in this case.  Mr. Tamimi pleaded guilty on July

19  10th of this year to one count of conspiring to violate IEPA,

20  the International Economic Emergency Powers Act, which is a

21  class C felony under federal law.  This is a second sentencing

22  hearing.  We had scheduled sentencing for a couple of weeks ago

23  and since that time there have been additional submissions.

24         Are there any preliminary matters before we proceed

25  with sentencing?

DBF5tamS                          sentence

1            MR. HALPERIN:  Not from the government, your Honor.

2            THE COURT:  Mr. Amini?

3            MR. AMINI:  Your Honor, I apologize.

4            The defendant was thinking about withdrawing the plea

5    and wanted to see if time would be granted before sentencing so

6    we can file a motion.  I talked to him this morning.  He said

7    my heart is hurting, I want to get over it.  So, based on our

8    discussion yesterday I was going to request the Court to give

9    us extra time before sentencing for the motion but this morning

10   he said my heart is hurting, please go ahead, and I'll just put

11   myself in the Court's decisions.

12           THE COURT:  When he said his heart is hurting, do you

13   mean, was it -- is that a physical issue or?

14           MR. AMINI:  I believe so.  He had a heart attack --

15           (Defendant and counsel conferring)

16           MR. AMINI:  He had a heart attack -- this is in the

17   filing of the PSR also.  He had a heart attack before and he

18   collapsed one time and he was in prison with the other, with

19   the previous attorney.  He does have medical problems, yes, and

20   this is in the PSR report and he said my heart is hurting.

21           THE COURT:  What does the heart hurting have to do

22   with whether we go forward with sentencing or he moves to

23   withdraw his plea?

24           MR. AMINI:  He believes he cannot just go through the

25   trial and not knowing what is going to happen, that's what he

1    explained to me.  But I permanently advised him and I am

2    involved with the case, this is a good case of entrapment,

3    entrapment defense, and I was willing to take it to trial.

4    There was a discussion with the previous attorney on the plea

5    and how a plea is good for cases like this.  And I mentioned to

6    him, he said he would rather go with plea despite my advice.

7    Since the last time we were in the Court I spoke with him on

8    the phone a couple times.  He agreed for me to request the

9    Court for an extension of the sentence and so I can file the

10   motion.  The Court may deny it.  I know about Rule 11, I have

11   done it in the past, I know there is a long jump, we have to go

12   to convince the Court, it is not easy, but I wanted to mention

13   to my client that is one other option.  And he kind of agreed

14   to it yesterday but today he is just saying he doesn't believe

15   he can take the beating, basically, for the trial and going to

16   trial.

17              I don't know what to do, your Honor.  That's what my

18   problem is.

19              THE COURT:  Mr. Halperin?

20              MR. HALPERIN:  If I may make a suggestion?

21              Number one, the government would strongly oppose such

22   a motion, obviously, and thinks it is entirely baseless.  The

23   Second Circuit case law is extremely strong about what an

24   incredibly high standard it is for the defendant to be able to

25   withdraw his plea.  Those factors are clearly not existent in

DBF5tamS                          sentence

1    this case.

2            I think clearly what has happened is that as these

3    sentencing hearings and presentencing hearings have progressed

4    and as these submissions have been filed with the Court, the

5    defendant has realized that he may well be getting a sentence

6    much, much higher than the time-served of a year and a day that

7    he has asked the Court for.  We have had a chance just to do

8    some very preliminary research but there is a Second Circuit

9    case, I think called Gonzalez, which says just because the

10   defendant has a change of heart about what he might receive at

11   sentencing that is of course no basis to withdraw a plea.

12           What the government would ask, your Honor, is that we

13   go forward with the sentencing today.  We really think there is

14   no reason for further delay of the sentencing.  And then, one

15   possibility would be we would have no objection if the Court

16   wanted to hold off on filing the actual judgment and giving the

17   defendant a period of two or three weeks so he can take this

18   time and think about this and if he wants to file a motion to

19   withdraw his plea, at that point we will vigorously oppose it

20   and then the Court will rule.  And if the Court denies it then

21   the Court can go ahead and enter the judgment.

22           But, we see no reason to further delay today's

23   sentencing.  It sounds like the defendant may not want to make

24   the motion based on what his attorney is saying but that's our

25   position, your Honor.

DBF5tamS                         sentence

1          THE COURT:  Is it possible to move to withdraw after I

2     have sentenced him here but before I have issued the actual

3     judgment?

4          MS. SURRATT:  Your Honor, we haven't had a chance to

5     do extensive research on this.  Rule 11.5(e) says that after a

6     Court imposes sentence the defendant may not withdraw a plea of

7     guilty or *nolo contendre* and the plea may be set aside only on

8     direct appeal or collateral attack.  The rule itself is not

9     clear as to whether that means the oral imposition of sentence

10    or the entry of judgment.

11         THE COURT:  Right.

12         Well, let me just say I'm familiar with the Gonzalez

13    case of the Second Circuit which is 970 F.2d 1095, and it sets

14    forth the standard for withdrawal of a guilty plea under Rule

15    11; A defendant is permitted to withdraw his guilty plea but

16    only before sentencing if he can show a fair and just reason

17    for requesting the withdrawal.  And the factors that the Court

18    considers as to whether there is a fair and just reason to

19    justify withdrawal of a plea are or they include, one, the

20    amount of time that has elapsed between the plea and the

21    motion -- here it has been several months since July, four

22    months -- second, whether the defendant has asserted a claim of

23    legal innocence; and third, whether the government would be

24    prejudiced by a withdrawal of the plea.  And insofar as the

25    motion to withdraw is based on involuntariness, the defendant

DBF5tamS                         sentence

1   must raise a significant question about the voluntariness of

2   the original plea.  A defendant's bald statements that simply

3   contradict what he said in his plea allocution are not

4   sufficient grounds to withdraw the guilty plea.

5         I mean, without revealing attorney-client

6   communications, what would be the ground for withdrawal of the

7   plea?

8         MR. AMINI:  Your Honor, it seems like the government

9   is enlarging the scope of the plea.  The plea which was offered

10  to my client, the parts therefore were helicopter owned by Red

11  Cross and they enlarged the scope of it and they also actually

12  falsified to FBI and to the Court and this is outside of the

13  plea which we believe they did not stick to their side of the

14  bargain, they extended, the enlarged the scope of the plea in

15  that case.

16        THE COURT:  But the elements of the offense are what

17  they are; voluntarily entering into an agreement that violates

18  the statute.  And I know there is disputes about the 60-page

19  helicopter part request and the 21 particular items that you

20  say were actually sent by the defendant.  Whichever version you

21  accept the guideline calculation is the same, it is 46 to 57

22  months.  So, I don't know what turns on that.

23        MR. AMINI:  But, your Honor, in the last hearing when

24  Mr. Tamimi said his order was for wires and screws and things

25  like that, the government actually stood up and said he is

1    lying and he is falsifying to the Court.  After they submitted

2    their own submission they actually attached a table which

3    actually verified what Mr. Tamimi said.  And then they had

4    nothing to do with the order just looking to make sure the

5    parts are the same so they're enlarging the scope.

6            And, your Honor, for the sentencing we believe, based

7    on all these cases, the Justice Department has published, it

8    makes no difference to the Courts if the item really, what kind

9    of item they are, if they are for nuclear purposes or if they

10   are for very important items or in this case we have the wires

11   and screws.  It may not make much difference on the

12   violation -- a violation is a violation -- but if the posted

13   speed sign is 60, I'm going 65, I violate it, but if somebody

14   is going 100 it is also violated.  But the sentence and the

15   punishment for somebody's caught driving 100 miles is different

16   from somebody's driving 65 miles.

17           In this case our argument is this is a 62 mile case in

18   a 60 mile zone, not 100 mile, as the government is trying to

19   make -- the government is asking for 57 months, your Honor.

20   That kind of sentence hasn't been given for people that have

21   $50 million transactions already made.

22           In this case Mr. Tamimi, all he has done is just given

23   the list.  We even don't know if those parts actually exist.

24   The individual number one, which the government tells me to

25   refer to the person, I have mentioned in my brief, the

1    individual no. 1, even we don't know he had the part.  If the

2    part does not exist and my client sends just the request, I

3    don't know if the violation really has happened, your Honor.

4    It maybe is my fault, I don't have enough knowledge of it, but

5    if I don't have the part how do you make a request from me?

6            THE COURT:  Here is the thing.

7            You talk about 100 miles an hour, 60 miles an hour.

8    The agreement was going above the speed limit.  The agreement

9    was as to the elements of the crime.  The agreement was -- the

10   disputes that are going on now in the sentencing submissions

11   are all about the attendant circumstances of the crime but they

12   don't change that he pled guilty to the elements of the crime.

13           Do you understand?  Do you agree?

14           MR. AMINI:  Your Honor, he pled for the attempt of

15   those items --

16           THE COURT:  It wasn't attempt, it was conspiracy.  It

17   was conspiracy which is different legally.

18           MR. AMINI:  But conspiracy in this case, if the -- the

19   co-conspirator, in this case if he does not have the part, is

20   telling me to give a list, I have provided the part.  If my

21   co-conspirator actually does not have the part I don't know

22   there is a violation.  He pled for it because he wanted to get

23   the case over with.  But if this case goes to trial, my

24   argument is if the co-conspirator comes to the trial and

25   testifies I did not even have these files, I was making it up

DBF5tamS                          sentence

1    with the FBI to make a file for you, I'm not sure there

2    actually is a violation because he did not have the part to

3    give.

4              THE COURT:  Well, Mr. Halperin, do you want to address

5    that?

6              MR. HALPERIN:  Yes, your Honor.

7              Look.  I think this whole question makes entirely

8    clear how baseless such a motion would be and now that we have

9    heard what the supposed grounds would be for withdrawing a

10   plea, I want to amend my previous statement.  We would oppose

11   even the defendant being allowed to file a motion to withdraw

12   the plea.  We think there is actually no grounds.

13             As the Court just noted, in no way, shape or form has

14   the government sought to enlarge the scope of the plea.  I'm

15   not even sure what that means.

16             The Court noted that there was specific elements to

17   the offense to which Mr. Tamimi agreed and pled guilty and

18   acknowledged that he had done those things.  The plea agreement

19   set forth a very clear guideline range of 46 to 57 months.  It

20   allowed a carve-out for defense counsel to argue for that lower

21   offense level.  This Court has already ruled that level 26

22   should apply and that the guideline range is 46 to 57 months.

23   He has already agreed to waive an appeal of any sentence 57

24   months or less.  Based on all the reasons we have set forth in

25   our supplemental submission, we are obviously asking for a top

DBF5tamS                          sentence

1    of the guidelines range and as we said earlier, the only thing

2    that has changed is that the defendant may have thought a month

3    ago in mid-October that he might have gotten a sentence of

4    time-served.  Obviously the government has no idea what the

5    Court will determine to be the appropriate sentence today but

6    based on everything we have submitted, we certainly think there

7    is a very strong argument for a much, much higher sentence than

8    that and that is what is clearly driving this.

9              So, we would strongly oppose the defendant being

10   allowed to even file a motion to withdraw his plea.

11             THE COURT:  Well, I think I need to determine whether

12   the defendant wishes to file a motion to withdraw his plea.  I

13   will say, given the standard, the defendant should know that I

14   haven't heard anything in what you have offered that suggests

15   what would count as a fair and just reason for requesting the

16   withdrawal but a defendant does have a right to seek it.  So, I

17   would certainly consider putting off the sentence to give you a

18   chance to withdraw it but I should also warn the defendant that

19   if he files a motion to withdraw the plea that there could be

20   an effect on the guidelines calculation because of the

21   acceptance of responsibility points.  And if I decided to deny

22   the points for acceptance of responsibility the guideline

23   calculation would be higher.  The low end of the range wouldn't

24   be 46 months, I think it would be higher.

25             Well, let me ask, first, does the defendant challenge

DBF5tamS                          sentence

1   the voluntariness of the plea?  Was there something involuntary

2   about the plea?

3              (Defendant and counsel conferring)

4              MR. AMINI:  Your Honor, he told me his plea was

5   voluntary for what he said.  Anything more than that it was not

6   his plea.  But for the items listed on the 21 list, just

7   provided in the list and that was for Red Cross and that was

8   his plea.

9              (defendant and counsel conferring)

10             MR. AMINI:  And he would like to finish it today and

11  he wants to put himself at the mercy of the Court and get it

12  over with.  That's what he also said.

13             THE COURT:  Okay.  Well, I mean, I will tell you the

14  guidelines calculation is what it is.  I believe that he not

15  only did he have the plea agreement which clearly set forth the

16  government's view of the guideline calculation which I think is

17  the correct guidelines calculation and which is the starting

18  point for sentencing, as I said, I also went through at the

19  plea allocution several times and said were there any other

20  agreements you had other than this plea agreement?  He said no.

21  I asked him do you understand that I'm the one who will decide

22  on your sentence?  He understood.  And several other questions

23  in the plea allocution to make sure it is voluntary.  So, I

24  believe it would be difficult to show that it was not

25  voluntary.  In my view what he admitted to counted as

DBF5tamS                              sentence

satisfying the elements of the conspiracy offense even though

the transaction didn't go through and there were no parts sent,

etc.  I don't think that is required to meet the elements of

the crime.

          Now, if you need a few minutes to talk with your

client I will give you five minutes if you would like or

whatever you want, to talk with your client about whether you

would like to make an actual motion to withdraw the plea.

Would you like a few minutes?

          MR. AMINI:  Yes, your Honor.  That way I cover myself.

          MR. HALPERIN:  Your Honor, if I can quickly put

something on the record?

          THE COURT:  Yes.

          MR. HALPERIN:  Because the Court brought up an issue

that frankly I had not thought of, but if the Court denies a

possible motion to withdraw the plea and then finds that the

defendant should not get three points of acceptance of

responsibility, the government wants to put on the record that

the offense level would then be 26 with a guideline range of 63

to 78 months, so considerably higher than the 46 to 57 months

that it currently is.  So, I think the defendant may want to

know that while he is talking to his attorney.

          THE COURT:  Did you understand that?

          MR. AMINI:  Yes.  He knows about the guideline too,

your Honor, but the defendant also has a chance to prevail at

1    trial based on all the documentation we have so we have an

2    entrapment defense in this case and we hope individual no. 1

3    comes and testifies, the FBI agent.  They have been on his tail

4    for 10 months.  I believe for him to get convicted at that

5    range he has to get convicted before the jury.  But if your

6    Honor would give me five minutes I will talk to him.  But

7    before that, your Honor, it has not been fair for my client

8    because he has no one here for him to testify at his trial.  He

9    has not his father, not his wife.  He doesn't have individual

10   no. 1 to come and testify what happened between them.

11          In the sentencing here for downward departure actually

12   it is important for the family members to come and see and, as

13   the PSR has said, there is downward departure warranted in this

14   case.

15          MR. HALPERIN:  Your Honor, I want to respond because I

16   think this Court has been incredibly fair in terms of the

17   process and procedures it has allowed the defendant so I just

18   feel like it is important to respond on the record.  To claim

19   that somehow it has not been fair, the Court very clearly and

20   carefully allocuted Mr. Tamimi at his plea hearing that he

21   would be giving up valuable constitutional rights by pleading

22   guilty instead of exercising his constitutional right to go to

23   trial including the right to call witnesses on his own behalf,

24   the right to confront and cross-examine witnesses, the right to

25   subpoena witnesses.  All of those things this Court allocuted

DBF5tamS                          sentence

1    him on extremely clearly.

2              So, the government strongly objects to any notion that

3    these proceedings have not been fair.  They have been entirely

4    fair.  This Court has been very generous in terms of allowing

5    Mr. Tamimi to file any submissions he wanted before sentencing

6    and we just wanted to make that point clearly on the record,

7    your Honor.

8              THE COURT:  Okay.

9              MR. AMINI:  Your Honor, I may have misspoken.  I did

10   not say this specific Court had done anything wrong.  No,

11   that's not true, actually.  I did not mention that.  This Court

12   has been really generous, has been really nice, and I'm not

13   saying that to get leniency for my client, I am being honest on

14   that.  What I said was in the sentencing usually family members

15   come and they testify.  That's not at trial, for the sentencing

16   is a different phase.  We don't have an opportunity as really

17   is not the fault of the Court, it is our fault being 6,000

18   miles away and they don't have a visa.  I cannot bring the sick

19   wife and the sick father to come and testify and plead to the

20   Court.  This Court doesn't have that picture in the mind how

21   the wife and how the father feels when the person who is

22   provided to them is in the prison in the United States.  That

23   is what I meant to say.  It is just circumstances we are in and

24   he is alone and he only has me in Washington, D.C.

25             That is all I was trying to say, nothing to do with

DBF5tamS                          sentence

```
 1    the Court.  The Court has been more than generous with us, your

 2    Honor.

 3              THE COURT:  I understand.  Thank you.

 4              MR. AMINI:  And the defendant knows that.

 5              THE COURT:  Okay.  Why don't we take a few minutes and

 6    discuss and I will come back and -- you would like to take a

 7    few minutes?

 8              MR. AMINI:  I would appreciate it if you can give me

 9    five minutes, if you can.

10              (Recess)

11              THE DEPUTY CLERK:  Swear the second interpreter,

12    please?

13              THE COURT:  Yes.

14              (interpreter sworn)

15              THE COURT:  Mr. Amini, did you get a chance to

16    discuss?

17              MR. AMINI:  Yes, your Honor.  Mr. Tamimi himself wants

18    to address the Court on the issue and that will probably be the

19    best if you will allow it, your Honor.

20              THE COURT:  Yes.  He may.

21              THE DEFENDANT:  Your Honor, I thank you for the

22    opportunity that you gave me.  I have asked my attorney,

23    considering all the trouble I have created for the Court and --

24              INTERPRETER:  I'm sorry.

25              I have asked my attorney to consider the expenses that
```

DBF5tamS                          sentence

1    I have incurred for the United States government and the Court

2    so far.  I have asked him not to file a motion and that my

3    sentencing to be completed today.  And I sincerely want to

4    express my regret.  I really regret, considering the expenses I

5    have incurred for the United States government, I apologize to

6    the United States Attorney who is present here and also the

7    Honorable Court, especially your Honor and considering my own

8    health factors that I had a heart attack, I was in coma for 10

9    days and also my family members are ill; my wife, my father,

10   please and I have an 11-year-old daughter who has been waiting

11   me for 14 months now.  I ask you, please, pay attention to

12   the -- consider the PSR report so that I can go back to my

13   family and I thank you for the opportunity you have given me.

14            THE COURT:  Thank you.

15            Is there anything further, Mr. Amini?

16            MR. AMINI:  Yes, your Honor.

17            In the information provided in the PSR it has the

18   family background and all the information in it are correct and

19   there is a recommendation which defendant would like the Court

20   to adopt, if it is possible, and based on the other cases of

21   similar kind we have provided to the Court, we believe the

22   recommendation of the PSR is warranted.  We just hope by

23   sending Mr. Tamimi back home the whole society will benefit

24   from it and the government won't spend too much time keeping

25   him in prison in the United States while his family, borrowing

DBF5tamS                          sentence

1   money and living in Iran.

2         Just one thing, your Honor.  When he came to the

3   United States he had $4,000 with him and he actually sold his

4   car -- and this is honestly a true story, I talked to his

5   wife -- he sold his car in order to get the money to come to

6   the United States.  He told this to the FBI agent, his wife

7   independently confirmed that to me.  He was unemployed for one

8   year before coming to the United States and it just is at the

9   mercy of the Court and just we hope Court follows all the cases

10  they are convicted up, IEPA for many other charges for many

11  people including Dr. Amin Nazmi, he got only 40 months.  He was

12  convicted by the jury for an IEEPA violation, conspiracy and

13  actually tax evasion, a list of items, eight or nine.  He was

14  convicted and the Court gave him 40 months.  And there are lots

15  of other cases we listed and the government also listed and we

16  just hope the recommendation of the PSR and the probation

17  office can be adopted by the Court, your Honor.

18         THE COURT:  Okay.

19         MR. AMINI:  Thank you, your Honor.

20         THE COURT:  Thank you.

21         So, I think we will proceed to sentencing in this

22  case.  I really essentially began the sentencing process last

23  time and went through the guideline calculation, we will

24  briefly review what I went over last time in anticipation of

25  sentencing.

DBF5tamS                        sentence

1              I will start by, just for the record, noting the

2       materials I have reviewed for today:  The presentence report

3       and addendum and sentencing recommendation by probation, the

4       initial submission by defense counsel which was on September

5       29th, submission by the government dated October 18th, then the

6       defendant's submission dated October 23rd, the government's

7       sur-reply dated October 24th, government submission with

8       attachments dated November 7th, defendant's submission with

9       attachments dated November 12th, and then the government's

10      letter dated November 14th.

11             Mr. Amini, you have read the presentence report and

12      discussed it with your client?

13             MR. AMINI:  Yes, your Honor.

14             THE COURT:  And Mr. Tamimi, I believe you said you

15      have read the presentence report and discussed it with your

16      lawyer?

17             (Defendant and counsel conferring)

18             THE DEFENDANT:  Yes.

19             THE COURT:  And Mr. Halperin, you have reviewed the

20      presentence report?

21             MR. HALPERIN:  We have, your Honor.

22             THE COURT:  I think we covered this but there are no

23      objections to the presentence report; is that right?

24             MR. HALPERIN:  No, your Honor.

25             MR. AMINI:  My objection was for the level 26 and 23

DBF5tamS                          sentence

1    at the time which the Court denied my motion, so.

2              THE COURT:  Okay.

3              As I said previously, I adopt the facts set forth in

4    the presentence report as my findings of fact and I'm going to

5    briefly review the guideline calculation which I reviewed at

6    the last hearing we had.  The base offense level is 26 under

7    2M5.1 and for the reasons I explained previously the base

8    offense level 26 applies.

9              Pursuant to the plea agreement, the defendant is given

10   a three-level reduction for acceptance of responsibility in

11   light of his guilty plea which he has confirmed today.  He is

12   not moving to withdraw.  The total offense level therefore is

13   23.  His Criminal History Category is I because of no prior

14   offenses and therefore the guideline range is 46 to 57 months.

15             This is the point where I normally give counsel an

16   opportunity to speak on behalf of the parties.  We have

17   discussed quite a bit already, but if Mr. Amini there is

18   anything you would like to add before imposition of sentence,

19   you may.  I have reviewed all of the materials that you have

20   submitted.

21             MR. AMINI:  Your Honor, I don't want to take too much

22   of the Court's time anymore.  I just want to request leniency

23   in this case because of many circumstances with the family.  He

24   is far from his family, nobody can visit him, and he has no

25   medical problem himself.  He pulled one of his teeth.  He is

DBF5tamS                          sentence

```
 1    pulling the other one, he has an infection, and I hope the
 2    Court will see some of the extra evidence we have for
 3    sentencing purposes.
 4               THE COURT:  Okay.
 5               Mr. Tamimi, you have already addressed the Court but
 6    is there anything else you would like to add today?  You are
 7    not required to say anything else.
 8               THE DEFENDANT:  I just want to express my regret and I
 9    sincerely apologize to the Court.  And I want to thank my
10    attorney for all the hard work he did and I really, sincerely,
11    apologize to the United States Government.
12               THE COURT:  Thank you.
13               Mr. Halperin, is there anything you would like to say
14    on behalf of the government?
15               MR. HALPERIN:  Very briefly, your Honor.
16               Since we have submitted a number of submissions
17    already and we have already gone through all the other 3553(a)
18    factors in a previous submission I'm not going to reiterate
19    again but I want to remind the Court because of the nature and
20    circumstance of the offense, Mr. Tamimi's history and
21    characteristics, his role in the offense and the need for
22    deterrence, we had previously argued that those all counsel
23    strongly for a guideline range sentence.
24               As the Court knows, we were adjourned three weeks
25    because the Court wanted additional materials about really two
```

DBF5tamS                          sentence

1    questions:  Number one, which entity was Mr. Tamimi seeking the

2    materials for, was it the military or the Iranian Red Crescent.

3    I think the document made clear by a preponderance of the

4    evidence that it was for the military; and number two, and in a

5    way as significantly, whether or not Mr. Tamimi had lied to the

6    Court.  And because we think there is substantial evidence that

7    he lied to the Court both at the pre-sentencing hearing in

8    October and at the plea colloquy in July, the government has

9    taken the unusual step of asking our supervisors for permission

10   to seek the top of the range in this case and, as the Court

11   knows, we are seeking the top of the range.  We think 57 months

12   is appropriate for all the reasons we have set previously about

13   the seriousness of the offense but also because the fact that

14   the defendant has lied to this Court is something that we

15   strongly believe should be considered by this Court in

16   determining the appropriate sentence.

17           Thank you.

18           THE COURT:  Let me ask you, it seems like the contact

19   for which he was making arrangements to obtain the spare parts

20   was with an entity called Panha, P-A-N-H-A, which is kind of

21   the helicopter repair entity in Iran and does things both for

22   the military and not for the military.  So, at the end of the

23   day, I don't know that the defendant was specifically -- had

24   the specific intent to aid the military or any other

25   organization.  Isn't it possible that he was just a business

DBF5tamS                          sentence

 1   person essentially obtaining the spare parts for an entity

 2   which I think is in violation of the law and I think certainly

 3   reflected a risk that it would go to the military?  But is

 4   there any evidence that he truly specifically was getting these

 5   things for the military as opposed to for Panha?

 6           MR. HALPERIN:  I think there is, your Honor.  I think

 7   the fact that the defendant himself -- and of course the

 8   standard here is preponderance of the evidence, obviously not

 9   beyond a reasonable doubt -- but the fact that the defendant

10   himself in phone calls with individual 1 on November 19

11   referenced the jet fighters, that this was for jet fighters, is

12   critical.

13           THE COURT:  But the way -- it is funny.  When you read

14   the whole transcript it is almost as though he was referencing

15   the jet fighters in a hypothetical way.  It is not clear that

16   those were the spare parts they were talking about in this

17   agreement.  Maybe I am misreading it.  It is very hard to

18   understand what they were saying but it sounded like it was

19   possibly hypothetical.

20           MR. HALPERIN:  I think the other thing, your Honor, is

21   when in the March 7 call when Mr. Tamimi notes that he told a

22   Mr. Han, *frankly, sir, this is military*, and they're laughing.

23   Those are other things that I think are important in terms of

24   the Court's consideration.

25           And Ms. Surratt reminds me, of course, that Tamimi

DBF5tamS                        sentence

1   acknowledged that Panha is connected to Iran's Air Force as

2   well.

3          So, I certainly agree with the Court that there is a

4   level of connecting the dots but I think based on Mr. Tamimi's

5   own statements in these calls that were recorded it is clear --

6   maybe not beyond a reasonable doubt but certainly by a

7   preponderance of the evidence, that he was trying to acquire

8   these things for the military.

9          Secondly, what is overwhelmingly clear beyond a shadow

10  of a doubt is that he was not trying to get these for the Red

11  Crescent, in other words that he never mentioned, at all,

12  during the course of the investigation or in its post-arrest

13  statements this was for the Red Crescent and that helps prove

14  the government's point, I would submit, respectfully, as well,

15  that it wasn't until the plea and then at the conference in

16  October that he first mentions the Red Crescent.  He doesn't

17  mention it at all.  So, I think the lack of discussion about

18  Red Crescent helps prove the government's point as well.

19          THE COURT:  Okay.  Is there anything further?

20          MR. AMINI:  Yes, your Honor.

21          I attached -- actually Exhibit 3 is in Farsi, I don't

22  know if I can ask the translator to read a couple of things.

23  It was as I mentioned in the submission, it is a helicopter who

24  belonged to the Red Crescent.  It went down on November 2nd of

25  2011 and actually it says: *It is usable but the engine and the*

DBF5tamS                          sentence

1    *body need to be repaired.*  Those are in Farsi, I got them from

2    website.

3              THE COURT:  No, I know about the evidence that the Red

4    Crescent uses these helicopters, although I have to say the

5    article that is Exhibit 4 that talks about the helicopter

6    crash, the Red Crescent, did you see the second to last

7    sentence of that article talking about the Red Crescent

8    helicopter actually says the helicopter belonged to the Air

9    Force and was on lease to emergency services.  That struck me

10   as undermining the argument that even if it was Red Crescent

11   that that was somehow inconsistent with it fundamentally for

12   the military.

13             MR. AMINI:  Your Honor, Exhibit 4, that is a different

14   crash than Exhibit 3, it is actually 2011, November 2nd.

15   Exhibit 2 actually has a picture of -- it is not crashed to the

16   ground, it actually, they land in the water in the river.

17             THE COURT:  Okay.

18             MR. AMINI:  And the body has a problem.  And my

19   understanding is, your Honor, the Iranian Red Cross, they own

20   about 19 helicopters but when there is an emergency they even

21   borrow from Turkey.  There is one of the actually -- I'm sorry,

22   it comes to Iran and actually crashes and it I have that one in

23   Exhibit 2.

24             So when there is an emergency they actually borrow

25   from other entities and they have borrowed from Turkey and

DBF5tamS                              sentence

1    other surrounding countries to come and help in the big

2    emergencies.

3              THE COURT:  Okay.

4              MR. AMINI:  So that is not unusual, your Honor.  They

5    have 19 for all purposes but then there is an earthquake or

6    something and the big emergencies then they do borrow.

7              THE COURT:  Okay.  Thank you.

8              Is there any reason why sentence may not be imposed at

9    this point?

10             MR. HALPERIN:  No, your Honor.

11             THE COURT:  Mr. Amini?

12             MR. AMINI:  No, your Honor.

13             THE COURT:  In preparing to sentence the defendant I

14   have considered the presentence report, the recommendation of

15   probation, the written and oral statements of defense counsel

16   and the defendant and the government as well as everything

17   submitted on behalf of the defendant.  I have considered each

18   of the factors set forth in 18 U.S.C. 3553(a) which include the

19   nature and circumstances of the offense, the defendant's

20   history and characteristics, the need for the sentence to

21   reflect the seriousness of the offense, to promote respect for

22   the law and to provide just punishment for the offense, also to

23   afford adequate deterrence to criminal conduct.

24             I have considered also the sentencing guidelines

25   provisions and policy statements, the need to avoid unwarranted

DBF5tamS                              sentence

1    sentencing disparities.

2         Starting, finally, the Court is to impose a sentence

3    that is sufficient but not greater than necessary to comply

4    with all the sentencing purposes all of which I have

5    considered.

6         Starting with the nature and circumstances of the

7    offense this is a serious offense.  It is a crime that

8    implicates the national security of the United States.  It is

9    evident to me that Mr. Tamimi knowingly entered into an

10   agreement to violate the statute IEPA by agreeing for the

11   trans-shipment of helicopter parts into Iran and he did so

12   knowing that such shipment was in violation of the United

13   States law.

14        The defendant argues a couple of things; one, that the

15   shipment was only for minor spare parts such as bolts and

16   screws; and second that he believed the parts were for

17   helicopters to be used by the Red Crescent organization.

18        First, the fact that the agreement was only for minor

19   parts does not diminish the seriousness of the offense or his

20   culpability.  Parts are parts and minor parts, such as ball

21   bearings are, just as essential as other parts and are equally

22   in violation of the law.

23        The defendant's recent statements he thought the

24   helicopters would be used for the Red Crescent are not

25   supported by the facts.  He did not raise this issue in any of

DBF5tamS                          sentence

his conversations at the time with the co-conspirator or

cooperator, nor did he raise it with the government agents

after his arrest.

          I think it is significant that he actually did refer

to the parts as military parts in recorded conversations

arranging for the transaction and he indicated that the end

user could not leave Iran which suggests that it was probably

not the Red Crescent.

          In any event, that doesn't change the ultimate

culpability or guilt for the crime.  I will say, as I mentioned

in my questions to Mr. Halperin, it is likely that the parts

were intended for Panha, P-A-N-H-A, the helicopter repair

company in Iran which services both military and non-military

helicopters.  It is not clear that he specifically intended

that these parts be used by the military.  It is possible that

he did not care but was involved in the transaction primarily

as a business person.  That seems likely to me.  But that

ultimately -- that ultimately did not matter for his

culpability.  He knowingly committed the crime and at the very

least he recklessly disregarded a high risk that the parts

could and would be used for a military purpose, and I believe

that brings the crime within essentially the heartland of where

the guidelines set the range for this offense as properly

calculated.

          I also need to consider the history and

DBF5tamS                          sentence

characteristics of the defendant.  I believe the defendant
willingly engaged in this conduct that was illegal, although he
suggests he was lured into it by the "co-conspirator."  There
is no basis for concluding that he was not a willing
participant or that he would not have considered this conduct
absent the other individual's involvement.

        Also, I will note that he is apparently a man who has
been a good family man.  I believe in other ways he is probably
a good person, he has provided for his family.  He cares about
his family very much.  His wife and his father have significant
health problems but those sorts of family problems are faced by
many defendants who commit crimes and they do not reduce the
defendant's culpability or the need for an appropriate
punishment.

        In the end, I believe that Mr. Tamimi was a business
person who was willing to take a very serious risk to make
money in this situation.

        I also need to consider the seriousness of the offense
and just punishment and these call for a significant sentence
that is consistent with the guidelines.  In terms of
deterrence, I need to consider the need for both general
deterrence and specific deterrence, the need to prevent this
defendant from engaging in such activity in the future.  I
doubt that he will engage in this activity again.  If he does,
I certainly don't think he will come back to the United States

DBF5tamS                          sentence

1    for fear of getting caught.  In terms of general deterrence,

2    though, it is also important for others to know that this is a

3    serious offense that will be taken seriously.

4          For all of these reasons I intend to sentence the

5    defendant to a guideline sentence of 46 months' incarceration.

6    I'm not going to impose supervised release because under 5D1.1

7    his deportation is inevitable.  I'm not going to impose a fine

8    but there is a $100 special assessment which is mandatory.

9          Does defense counsel have any legal objection to the

10   steps or know any legal reason why it may not be imposed?

11         MR. AMINI:  Your Honor, based on the cases of the

12   similar kind, 48 months is not along the line of the other

13   cases.

14         THE COURT:  46.

15         MR. AMINI:  I'm sorry, 46.  We have, again, Dr. Ahtar

16   even with 32 charges against him and pleading guilty for the

17   same IEPA violation he got just probation and he was let go to

18   Iran.

19         I mentioned Dr. Amir Nazmi -- he was convicted --

20   convicted of IEPA plus eight other charges in a jury trial; he

21   got only 40 months.

22         In this case defendant really just gave the list of

23   the items, not even seeing it.  I believe 46 months is just too

24   much, is not considering any of these downward departures

25   mentioned in the PSR report, your Honor.  I believe that is

DBF5tamS                          sentence

1    just too long for what has been done in this case.

2                MR. HALPERIN:  Judge, that's obviously not a legal

3    reason why the sentence can't be imposed.  There is no legal

4    reason why this guideline range sentence cannot be imposed.

5                THE COURT:  Okay.  Mr. Tamimi, please stand.

6                It is the judgment of this Court that you be committed

7    to the custody of the Bureau of Prisons for a period of 46

8    months.  There will be no fine because I find that you are not

9    in a position to pay a fine except for the mandatory $100

10   special assessment.

11               You have a right to appeal your conviction and

12   sentence except to whatever extent you have validly waived that

13   right as part of your plea agreement.  If you are unable to pay

14   the costs of appeal, you may apply for leave to appeal in forma

15   pauperis.  Any appeal must be filed within 14 days of the

16   filing of the judgment of conviction.

17               I direct that a complete copy of the PSR be provided

18   to the Bureau of Prisons and the Sentencing Commission and that

19   counsel on any appeal have access to the report.

20               The clerk will prepare the judgment and see to it that

21   the required documentation is sent to the sentencing

22   commission.

23               Does the government move to dismiss the underlying --

24   I think there was a second count.

25               MR. HALPERIN:  We do, your Honor.

DBF5tamS                              sentence

1                THE COURT:  That count is dismissed.

2                And is there a relevant forfeiture in this case or

3      not?

4                MR. HALPERIN:  No forfeiture, your Honor.

5                THE COURT:  Is there anything further?

6                MR. HALPERIN:  Nothing further, your Honor.

7                THE COURT:  Anything further?

8                MR. AMINI:  Your Honor, can he be sent to Fort Dix in

9      New Jersey, I believe?  It is a minimum security prison with

10     the medical facility so he will be at least seen for the heart

11     attack.

12               THE COURT:  Is he getting medical treatment now?

13               MR. AMINI:  Yes, your Honor, but sometimes the

14     medication comes late.

15               THE COURT:  I'm not familiar with what level Fort Dix

16     is.  Does the government know anything about that?

17               MR. HALPERIN:  Your Honor, I don't know offhand what

18     level Fort Dix is but I think the Court knows the Court can

19     make a recommendation.  BOP will make its own determination as

20     to what level of security prison Mr. Tamimi should be in and

21     obviously almost any, I think BOP facility will have medical

22     facilities to handle what is relatively routine.  I'm not

23     minimizing the severity of the illness but this is not an

24     unusual type of illness.  So, I think the BOP is well equipped

25     to handle anything like that.

DBF5tamS                         sentence

1          THE COURT:  I can make a recommendation.

2          MR. AMINI:  Yes, your Honor.  That's what we ask.

3          THE COURT:  Is it because of the northeastern region

4     that he wants or more a specific --

5          MR. AMINI:  He has no one in the United States.  At

6     least he would be close to me so I can probably visit him.

7          THE COURT:  Closer to what?

8          MR. AMINI:  He would be close my office so I can visit

9     him maybe every six months or so, make sure he is doing okay.

10         THE COURT:  You are in Washington, aren't you?

11         MR. AMINI:  Yes, your Honor.

12         THE COURT:  So you suggested Fort Dix.

13         MR. AMINI:  He mentioned to me he heard from the other

14    prisoners Fort Dix for his condition is a better place.

15         THE COURT:  Okay.  I'm happy to recommend that,

16    assuming it is appropriate to the Bureau of Prisons and, again,

17    sometimes it works and sometimes it doesn't.

18         MR. AMINI:  Yes, your Honor.

19         THE COURT:  Is there anything further?

20         MR. AMINI:  No, your Honor.  Thank you.

21         MR. HALPERIN:  Not from the government.

22         THE COURT:  Thank you.

23         MR. HALPERIN:  Thank you, your Honor.

24                            o0o

25