DapWtamC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                        12 CR 615 (JPO)

5   AMIR ABBAS TAMIMI,

6                   Defendant.

7   ------------------------------x

8                                         New York, N.Y.
                                          October 25, 2013
9                                         10:45 a.m.

10

    Before:
11
                        HON. J. PAUL OETKEN,
12
                                          District Judge
13

14                      APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    JASON P.W. HALPERIN
17  ANDREA L. SURRATT
         Assistant United States Attorneys
18
    SAEID B. AMINI
19       Attorney for Defendant

20
    ALSO PRESENT:  Shirazi Namad, Interpreter (Farsi)
21

22

23

24

25

DapWtamC

1          (Case called)

2          MR. HALPERIN:  Good morning, your Honor.  Jason

3  Halperin and Andrea Surratt, for the government, and with us at

4  counsel table are Thomas Smith of the Department of Commerce,

5  Matthew Fede of the Homeland Security Investigation and Michael

6  Dabbo of the F.B.I.

7          THE COURT:  Good morning.

8          MR. AMINI:  Good morning, your Honor.  Saeid Amini,

9  for the defendant, Amir Abbas Tamimi.

10          THE COURT:  Good morning.

11          MR. AMINI:  Your Honor, I didn't have an opportunity

12  to talk to him.  I don't know if I can have five minutes.  He

13  just walked in.  I came early this morning to see him.  He

14  wasn't brought in.  I didn't have an opportunity to talk to

15  him.  He wanted to make a statement.  I wanted to go over his

16  statement.  I don't know if I could have like a couple minutes

17  with him because of the translation of his statement.  I want

18  to make sure the translator is also having a copy of what he

19  wants to say so there's no misunderstanding.

20          THE COURT:  You need about five minutes?

21          MR. AMINI:  Five minutes, I would appreciate it, your

22  Honor.

23          THE COURT:  Okay.  Sure.

24          (Recess)

25          THE COURT:  We're scheduled for sentencing in this

DapWtamC

1    case, and there are a number of submissions.  I want to start

2    by just making sure I've received everything I should have.  In

3    preparation for today, I've reviewed the presentence report

4    with an addendum and recommendation by the probation

5    department, submission by defense counsel, Mr. Amini, dated

6    September 29, submission by the government, dated October 18, a

7    further submission by the defendant, dated October 23, and the

8    government's surreply, dated October 24, and there are various

9    attachments to several of those.

10              Do I have everything I should have?

11              MR. HALPERIN:  From the government, yes, your Honor.

12              MR. AMINI:  Yes, your Honor.  Just that last

13   submission by the government, I did not get an opportunity to

14   reply.  I'm just going to make an oral argument.

15              THE COURT:  Okay.  Mr. Amini, have you read the

16   presentence report and discussed it with your client?

17              MR. AMINI:  Yes, your Honor.

18              THE COURT:  Mr. Tamimi, have you read the presentence

19   report and discussed it with your attorney?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Mr. Halperin, have you reviewed the

22   presentence report?

23              MR. HALPERIN:  We have, your Honor.

24              THE COURT:  Are there any objections to the

25   presentence report?

DapWtamC

1              MR. AMINI:  Your Honor, our objection is to the base

2       offense level of 26.  We believe it is 14 and we argued for

3       that, and anything related to the base offense level, we

4       object.

5              THE COURT:  Right.

6              MR. AMINI:  Other than that, we have no objection,

7       your Honor.

8              THE COURT:  We need to swear the interpreter.

9              (Interpreter sworn)

10             MR. HALPERIN:  Your Honor, the government has no

11      objections to the PSR.

12             THE COURT:  So the objection with respect to the base

13      offense level, you argue should be 14 instead of 26, is that

14      right?

15             MR. AMINI:  Yes, your Honor.

16             THE COURT:  And this was an argument that you

17      preserved, I think, in the plea agreement.  I'm going to start

18      with the guideline calculation, and then I'm going to give each

19      party a chance to speak.  I'll tell you now I haven't decided

20      whether to go forward with sentencing today because I think

21      there's a disputed factual issue.  It doesn't, I don't think,

22      go to the guideline calculation but goes to the appropriate

23      sentence, and I think the culpability of the defendant under

24      the factors under 18 U.S.C. 3553(a), and that disputed factual

25      issue is what was the defendant involved in this exportation of

DapWtamC

1    helicopter parts for.  Was it for the Red Crescent, as he has

2    said under oath, or was it for an entity associated with the

3    Iranian military, which is what the government says he

4    admitted.

5         As I say, I don't think the guideline calculation

6    changes based on a determination between the two versions of

7    events, but I think it matters to me in what an appropriate

8    sentence would be considering all of the factors under the

9    statute.  I'm considering holding an evidentiary hearing on

10   that issue, a <u>Fatico</u> hearing, and we could do it today if

11   people are prepared, but I didn't give any notice of this, so I

12   would be prepared to adjourn the sentencing to a later point

13   when we can schedule an evidentiary hearing and people can

14   prepare for that.

15        In any event, having said that, I want to start with

16   the guideline calculation and then give the parties an

17   opportunity to address anything relating to sentencing,

18   including the issue I've raised about the motivation and

19   purpose behind the defendant's conduct.  The starting point in

20   determining sentence is the guidelines, which is a recommended

21   or advisory starting point for any sentencing based on the base

22   offense level of various categories of offenses and then the

23   criminal history category of the defendant.  The Court is no

24   longer required to follow the Sentencing Guidelines, but I am

25   still required to consider the applicable guidelines before

DapWtamC

imposing sentence, and it is the lodestar, or the lodestone, in
any sentencing decision.  So it is the starting point, and I'm
going to start by going through the guideline calculation.

In this case, there was a plea agreement in which the
parties stipulated to a guideline calculation subject to
defendant's right to argue that the base offense level is 14
instead of 26.

Other than that, are there any other issues regarding
the accuracy of the guideline calculation in the presentence
report?

MR. HALPERIN:  Not from the government, your Honor.

MR. AMINI:  No, your Honor.

THE COURT:  Based on the absence of objection and my
own independent calculation of the guidelines, I accept the
guideline calculation in the presentence report.  On the
disputed issue, I do conclude that the base offense level is 26
under the guidelines.  I've used the sentencing guideline
manual effective November 1, 2012.  I find under 2M5.1 of the
guidelines the base offense level is 26.  26 applies where
national security controls were evaded.  Several courts have
held that this provision applies if the embargo or sanction was
adopted for national security purposes and irrespective of
whether the particular item itself presents a national security
issue.  I believe here, it probably does present a national
security issue, but even if it doesn't, the controls at issue

DapWtamC

1    clearly are national security controls.  IEEPA and the

2    particular provisions at issue here were clearly adopted for

3    national security purposes, and I conclude that they were,

4    therefore, national security controls for purposes of 2M5.1.

5         The defendant is entitled to a three-point reduction

6    for acceptance of responsibility.  At least that's my initial

7    conclusion subject to further evidence, if I decide to have an

8    evidentiary hearing.  That would mean the total offense level

9    is 23, the criminal history category I, because there are no

10   known prior offenses, and that yields a guideline range of 46

11   to 57 months.

12        I now would like to give defense counsel, Mr. Amini,

13   an opportunity to speak on behalf of defendant, if you wish to

14   say anything.

15        MR. AMINI:  Your Honor, this is a regulatory

16   violation.  It is not in any way a violent crime.  That's No.

17   1.  And then also, the government never made any allegation on

18   the scale or the amount of the alleged transaction.

19        THE COURT:  On the what?

20        MR. AMINI:  Alleged transaction.  The amount and the

21   quantity and the quality of it, it's just a blanket saying

22   there was helicopter parts.  There's no list of helicopter

23   parts they are talking about and how much the transaction

24   really amounted to.

25        THE COURT:  You mean how much money is involved?

DapWtamC

1              MR. AMINI:  Right, and I believe that, your Honor, is

2     very important for sentencing purposes.  And there are big

3     sentences the courts have given if this was involving large

4     transactions and actually an export was made.  In this case, no

5     export was made.  It was just an attempt.  This defendant was

6     arrested upon his arrival.

7              THE COURT:  Right.  You keep calling it an attempt,

8     but it's a conspiracy.  I mean, he pleaded guilty to

9     conspiracy, I think.  Right?

10             MR. HALPERIN:  Correct.

11             MR. AMINI:  The conspiracy was an attempt to.

12             THE COURT:  Conspiracy to attempt?

13             MR. AMINI:  Attempt to purchase, not export.

14             Your Honor, we are separating the line, attempt to

15    actually make the shipment, there's an attempt to actually, to

16    purchase.  This item was never purchased.  This attempt is

17    before any shipment.  There's no shipment arrangement that has

18    been made.  There's no money transaction that has been made in

19    this case, and I believe that is actually important for purpose

20    of 31 C.F.R. 560.203 and 204, which are advisory.  Being a

21    non-U.S. person, attempt really, attempt to purchase something

22    as a non-U.S. person doesn't apply.  31 C.F.R. 560.204 applies

23    to a foreign person, but it requires actually shipment.

24             THE COURT:  But he pleaded guilty to conspiracy to

25    violate IEEPA; in other words, agreeing with other people to

DapWtamC

1    engage in this exportation of goods via Korea to Iran

2    unlawfully.  So whether the transaction was completed or not

3    doesn't matter.  That's how conspiracy works.

4              MR. HALPERIN:  Exactly.

5              THE COURT:  I don't understand this argument that the

6    statute doesn't apply.  The statute criminalizes conspiracy to

7    violate IEEPA.  That's agreeing with others to engage in the

8    exportation.

9              MR. AMINI:  But, your Honor, the level of the

10   violation, just to conspire to do something, that conspire

11   actually has something done.  I conspire and then I make

12   arrangement and then I do it.  That is different from I

13   conspire but nothing happens.  That is what I'm trying to say.

14   In this case, nothing happened.  No purchase was made.  No

15   payment was made.  The conspiracy died at infancy, while in

16   gestation.

17             THE COURT:  That happens in every conspiracy case

18   where the government stops it from being completed.

19             MR. AMINI:  I believe the courts have looked at this

20   differently when it comes to sentence when actually the

21   shipment was made, was conspired and the shipment was made.

22             THE COURT:  Okay.

23             MR. AMINI:  And the cases really did not even go any

24   farther.

25             THE COURT:  I understand.  Anything else that you

DapWtamC

1    wanted to add?  I've read all your submissions.  Is there

2    anything else you would like to add?

3         MR. AMINI:  The government is alleging many things

4    which is not in the four corners of the indictment.  We don't

5    have any documentation or any affidavit from anyone and they

6    just make a statement and I would like the Court to order that

7    such an allegation that my client made an admission, those

8    should be produced with the transcript before the next hearing.

9         MR. HALPERIN:  Judge, I'm not clear on what counsel's

10   talking about because everything we have put into our

11   sentencing submission was produced in the voluminous discovery

12   produced to defendant and defense counsel, as were his

13   postarrest proffer 302s, which contain many of the admissions

14   that we cite in our sentencing submission.  So I'm just not

15   clear as to what defense counsel is referring to.

16        THE COURT:  You have the discovery he's referring to,

17   right?

18        MR. AMINI:  Right, but I haven't seen what they

19   actually made these allegation sentencing report.

20   Specifically, the defendant admitting these are for military.

21        THE COURT:  Admitting what?

22        MR. AMINI:  This is for military, for the Iranian

23   military.

24        THE COURT:  If you're done with your statement, I'll

25   let Mr. Tamimi make his statement, if he'd like.

DapWtamC

1          MR. AMINI:  Sure.

2          THE COURT:  Mr. Tamimi, if there's anything you would

3     like to say, you're welcome to do so now.

4          THE DEFENDANT:  Your Honor, greetings.  As you are

5     informed, I was arrested on October 5, 2012, on IEEPA charges.

6          As you're aware, I was arrested on October 5, 2012, on

7     IEEPA charges.  As the law explicitly indicates that it is for

8     the people who are U.S. persons, people who are residents of

9     the United States or have residency in the United States.  I've

10    never been a resident in this country and I've never committed

11    any crime either in this country or my own country.

12          Your Honor, Mr. Prosecutor unfortunately repeats the

13    same thing over and over several times and the repeated

14    contacts by Mr. Ghojolo from the United States with me causes

15    that a negative mentality in you and whoever presents to them.

16    Your Honor, I have question for you.  I was not in contact with

17    this gentleman for several years.  Who was it who contacted me

18    for the first time?  And who was the person who initiated this

19    transaction and who created this entrapment for me?

20          THE INTERPRETER:  I'm sorry, your Honor.

21          (Interpreter conferred with defendant)

22          THE DEFENDANT:  Who was the person who contacted the

23    government agents who insisted, who insisted to me and who

24    intended to sell these spare parts.  Your Honor, I did not even

25    have his contact number so that I would even call him.

DapWtamC

1    Generally, everybody in the world, there are two sides to a

2    transaction, have the basic information about each other, like

3    the contact telephone number, fax.  He called me every day, but

4    I can't obtain his equipment.

5         Your Honor, the prosecutor states that the company in

6    Iran wanted this equipment for military purposes.  Please note

7    a few things.  First of all, since 1973 up to now, none of the

8    Bell helicopters of any kind were sold to Iran.  And it's close

9    to 40 years that no transactions have taken place.  And it's

10   obvious that the equipment of the helicopters from 40 years ago

11   cannot be up to date and with the best technology, and by

12   referring to the manufacturing shows that all of them were

13   obsolete.  The Iranian Red Crescent in Iran, as a part owner of

14   some of this equipment, lacks any repair or facility for

15   technical repairs, and, therefore, it has to contact the said

16   company Panha, the only exclusive agent for procurement and

17   providing of technical services for the helicopter.  And this

18   company acts for the technical inspection and gives a list of

19   the equipment necessary for the repair to the owner.  If you

20   refer to the list that I requested from Mr. Ghojolo, and that

21   list was only about the motor part of the helicopter and it

22   included screws, bolts, and washers and did not have any

23   special military application.

24        Your Honor, my father, because of my mother's passing

25   away and brain illness, is under my care, and because he cannot

1    move he is highly dependent on me.  And also my wife because of
2    the cancerous illness of breast and --
3              THE INTERPRETER:  Sorry, your Honor.
4              (Interpreter conferred with defendant)
5              THE INTERPRETER:  Sorry.
6              THE DEFENDANT:  -- history, has had several surgeries
7    and also needs an urgent surgery again.  And also my only
8    daughter, who is 11 years old, is highly dependent on me.
9              Your Honor, I hope that this sentencing is close to 14
10   months, be a good punitive measure for me, and I sincerely
11   apologize to the United States Government for this incident and
12   for what happened.  And I hope that by pardoning me you make my
13   family happy.  And I thank you for the opportunity you gave me.
14             THE COURT:  Thank you.  You may be seated.
15             Again, I've received your submission, Mr. Halperin,
16   but if there's anything you would like to say on behalf of the
17   government, you may.
18             MR. HALPERIN:  A few words.  Thank you, your Honor.
19             Your Honor, let me address the Court's initial inquiry
20   first about the need for Fatico.  We respectfully submit that
21   we don't need a Fatico to resolve the facts because the
22   government has proffered as part of its sentencing submission
23   and as part of the facts in the case, we've included Exhibit A,
24   telephone conversation in which Mr. Tamimi admitted that the
25   merchandise was being acquired or attempted to be acquired for

DapWtamC

1   military purposes.  He's also not challenged the government's

2   representations in his postarrest interviews that he made

3   admissions it was for officials connected with the Iranian Air

4   Force.  So I do think the Court has a factual basis to find by

5   a preponderance of the evidence that these goods were being

6   procured by Tamimi for the Iranian Air Force.

7        THE COURT:  Was there anything in the postarrest

8   statements or any of the e-mails or any of the other documents

9   referring to Red Crescent?

10        MR. HALPERIN:  No.

11        THE COURT:  Your view is that's just a made-up story?

12        MR. HALPERIN:  I view that as completely made up to

13   try to get leniency from this Court and that when he said that

14   today and at the plea hearing that was completely false and

15   completely contrary to everything he had said both during the

16   course of the investigation when we had those recorded

17   conversations, as set forth in Exhibit A, and over the course

18   of four days of the postarrest interviews last October where he

19   never mentioned the Iranian Red Crescent.

20        With the Court's permission, I'll proceed to make a

21   few points related to sentencing.

22        THE COURT:  Let me first ask.  Did you consider moving

23   for or asking for an obstruction of justice increase?  He said

24   that under oath in his plea allocution.

25        MR. HALPERIN:  Your Honor, we had a plea agreement at

DapWtamC

```
 1    the time of the plea, and, at the plea, the falsity of that had

 2    not yet been clear to the government.  That was the first time

 3    we ever heard it mentioned; it was at the actual plea

 4    allocution, and, as we said in our surreply, we were focused on

 5    the plea allocution, making sure he acknowledged all the

 6    elements of the offense, and we thought we would address this

 7    at the sentencing.  So the first time we ever heard the

 8    supposed Red Crescent excuse was on July 10, at the July 10

 9    plea allocution.  And then between that date and today, we have

10    had several meetings with the agents where they have

11    underscored for us the falsity of those statements that

12    Mr. Tamimi made at the allocution.

13            So we did not think it was, very fairly we could have

14    probably sought a denial of acceptance of responsibility points

15    and/or obstruction, but we have a plea agreement, and in this

16    case we decided to stand by our plea agreement but vigorously

17    ask for a guidelines range sentence.  We thought that was the

18    appropriate way to handle it.

19            THE COURT:  If there were a Fatico hearing on this

20    issue of was it for someone connected to the

21    military/contracted for the military versus this Red Crescent

22    organization, I've seen your submission where you attach --

23            MR. HALPERIN:  Exhibit A.

24            THE COURT:  You have an e-mail, you have a summary of

25    the call.  Are there actual transcripts of calls or recordings?
```

DapWtamC

1          MR. HALPERIN:  We could certainly have a transcript

2     made.  I think this is a summary of a recorded telephone

3     conversation, so a <u>Fatico</u> would simply consist of us either

4     having an official transcript made by an F.B.I. Farsi-speaking

5     translator and/or if the Court wanted to hear the initial

6     recording, which I believe is in Farsi, the agents are nodding

7     yes, we could play that.  And then the only other thing that a

8     <u>Fatico</u> might entail is we could put one of the F.B.I. agents

9     who handled the postarrest interviews on the stand where

10    Mr. Tamimi acknowledged that it was for this official connected

11    with the Iranian Red Crescent -- excuse me, with the Iranian

12    Air Force.

13          THE COURT:  Are there F.B.I. 302 reports?

14          MR. HALPERIN:  There are, which have been produced in

15    discovery, and we're happy to provide those to the Court.

16          THE COURT:  What do they say?

17          MR. HALPERIN:  They say essentially that, Judge, if

18    you can give me a moment to get as precise a rendering as

19    possible for the Court.  Ms. Surratt points to tape seven.  And

20    in paragraph eight on page eight, which is the section talking

21    about Mr. Tamimi's postarrest admission, the government writes,

22    "When asked about the Bell 206 helicopter parts, Tamimi said

23    they were ordered from him by a man named Mohammed," we

24    redacted the last name, "from a company called Panha.  Tamimi

25    also admitted that Panha is connected to Iran's Air Force.  He

DapWtamC

1    then added that he believed that Mohammad is Basij," and we

2    dropped a footnote explaining what Basig is, which is kind of

3    an arm of the IRGC, the Islamic Revolutionary Guards Corps.

4                    THE COURT:  B-I-S-I-G?

5                    MR. HALPERIN:  I'm sorry.  B-A-S-I-J.

6                    THE COURT:  But his explanation that he just gave

7    today -- is it Panha?

8                    MR. HALPERIN:  Panha.

9                    THE COURT:  That that is the provider for the Red

10   Crescent.

11                   MR. HALPERIN:  And again, we think that that

12   representation that he made today is false, is a lie, because

13   he never said that in the postarrest interviews to the F.B.I.

14                   I'd also point the Court to page four of the

15   government's submission, paragraph two, where during the

16   investigation there was a recording in which Tamimi, on

17   November 15, 2011, reading from page four of our initial

18   submission, paragraph two:  "On November 15, 2011, Tamimi told

19   individual one that he," meaning Tamimi, "had just met with

20   Iranian Air Force personnel and that they were interested in

21   individual one's parts and would submit a parts list."

22                   I think based on all these points and pieces of

23   evidence, the Court can certainly find by a preponderance that

24   Tamimi attempted to acquire these goods for the Iranian Air

25   Force.

DapWtamC

1          Sorry, your Honor.  Could I just have a moment?

2          THE COURT:  Sure.

3          MR. HALPERIN:  I don't know if the Court wants to hear

4    more on that or if I should proceed to the sentencing

5    arguments.  Whatever the Court's preference is.

6          THE COURT:  Why don't you go ahead and do the

7    sentencing arguments and I'll give you a chance to respond.

8          MR. HALPERIN:  Your Honor, we've submitted nearly 40

9    pages in advance of sentencing, so we're certainly not going to

10   repeat many of the points and I'll just say a few words.  In

11   this case, the government believes that a guideline range is

12   very appropriate.  The offense conduct was serious and

13   significant and undermined and jeopardized the national

14   security of this country.  We certainly agree that, as the

15   Court has now found, the base offense level is entirely

16   appropriate since presidents of both parties have found Iran to

17   constitute a threat to our country's national security, and

18   that's why these various executive orders and the sanctions

19   have been put in place.

20          As we said, Judge, we think it is an important point

21   in terms of the Court's consideration of the 3553(a) factors,

22   the nature and circumstances of the offense, that Mr. Tamimi

23   was trying to acquire these goods for the Iranian Air Force.

24   He said that during the investigation, and he said it after his

25   arrest.  The fact that it was for the military makes the

DapWtamC

1      offense that much more serious.

2              Now, your Honor, we believe that he's lied to the

3      Court on two occasions about this absurd story that he was

4      trying to acquire the goods for the Red Crescent.  He never

5      said that during the course of the investigation or in the

6      postarrest interviews.  I think it's important for the Court to

7      consider Tamimi 's role in the conspiracy, which was vital in

8      this case.  He was the one who enlisted the shippers in South

9      Korea.  He identified them, he then recruited them and brought

10     them into the conspiracy saying that he had worked with them

11     before and that he knew that one of them, who was based in

12     South Korea, would charge more for sensitive items in violation

13     of the sanctions against Iran.

14             He and the coconspirators talked about how they would

15     falsify shipping labels to evade customs from the United States

16     and South Korea.  They talked about how they would hide the

17     ultimate destination of the goods on the packages, so the

18     evidence shows that Tamimi had an international network of

19     criminal associates that he could call on, which he did in this

20     case.

21             Your Honor, we do believe deterrence is a vital

22     Section 3553(a) factor in this case.  A guidelines range

23     sentence would emphasize that conduct designed to evade the

24     United States sanctions on Iran will not be tolerated no matter

25     who commits the crime and no matter where in the world they're

DapWtamC

1    located.  I think what you heard, the final point here, Judge,

2    what you heard from Mr. Tamimi today was a real lack of

3    remorse.  Excuses, a new 11th-hour claim of entrapment and a

4    discussion about Bell helicopters and how he just told the

5    Court, and obviously I don't have the official transcript in

6    front of me, that no Bell helicopters had been sold to Iran for

7    40 years.  I think the Court should respectfully ask itself how

8    Mr. Tamimi would know that, how does he have such a clear

9    knowledge of what the Iranian government has imported from the

10   United States as it relates to Bell helicopters.  I think that

11   only underscores our argument that this defendant before this

12   Court has connections, strong connections, to the Iranian

13   government, to the Iranian Air Force, that he would even know

14   and be able to describe to the Court in his view the history of

15   Iran's imports or lack thereof of these Bell 206 helicopter

16   components.

17            Your Honor, for all these reasons, we strongly request

18   that the Court sentence Mr. Tamimi to a sentence within the

19   guidelines range of 46 to 57 months.  Thank you.

20            THE COURT:  Thank you.  Mr. Amini, is there anything

21   you would to respond to?

22            MR. AMINI:  Your Honor, the Department of Justice, as

23   I provided in Exhibit F of my initial filing, lists all the

24   citations of similar kind.  And today, Mr. Tamimi was made a

25   big player.  Department of Justice about this case is a blurb,

DapWtamC

is only a couple of lines, included in another case.  It's not
even standing on its own.  For some reason, this case has been
blown out of proportion.  Your Honor, Mr. Tamimi never lied in
the investigation at the beginning or never lied in court.  He
said these parts for this repair company called Panha, Panha
repairs all the helicopters.  The helicopter parts he was going
to be sending was for Red Crescent.  Red Crescent are the
owner, Red Crescent is the owner of these helicopters, which he
was going to get the parts, but it was going to be repaired in
the shop, which is owned by, either partially or fully by the
government.  But there's a Web site.  If your Honor allow me,
he told me there's a Web site, I will link the Web site so we
can see what the Panha is.  He admitted the part was for Panha,
but he never admitted at any time who was the owner of these
helicopters or these parts for.

THE COURT:  What about his admission that this person
named Mohammed is Basig?

MR. AMINI:  Your Honor, I haven't seen the transcript.
I don't know what the government is relying on.  There is a
Farsi translation.  I would like to go into looking at the
tapes and see what they're talking about, what discussion, and
we will get the Farsi and translate it to see what he has said.

THE COURT:  You may continue.

MR. AMINI:  Your Honor, Mr. Tamimi said the items
which government never gave the list to the Court, we don't

DapWtamC

```
 1   know what items, what component actually they're talking about.
 2   They never mentioned that.  They just say component.  We don't
 3   know the type of the component.  Mr. Tamimi today testified
 4   they are for bolts, bearings, and the washers, and this is not
 5   really mentioned by government at any part of their
 6   submissions.  When they say component, what component?  What
 7   was the value of this component?  What was it going to be used
 8   for?  They make a blanket, global statement that this is going
 9   to harm U.S. safety.  They cannot just make that kind of
10   blanket statement.  They need some empirical evidence to
11   connect the part that they are saying is going to harm the
12   United States to the part involved.  In this case, no such
13   submission or proffer has been made by the government.
14            THE COURT:  Okay.
15            MR. AMINI:  Again, I don't know, your Honor.  I have,
16   I can now look at these tape they have given me so I can locate
17   what the government is talking about.  I want to know at this
18   arrest there was a translator.  There's no transcript at this
19   time, and my client says he never said this was for the Army.
20   He said for Panha, and I don't know how the government is
21   taking the Panha and how they translating it to Basig and
22   getting it to government.  Where the Basig was mentioned by my
23   client?  I haven't seen such language.
24            THE COURT:  Okay.
25            MR. AMINI:  Your Honor, I believe this is a small
```

DapWtamC

1    case, and the cases that are cited to the Court just yesterday

2    by the government, your Honor, they are really not similar

3    cases.  They have eight, nine cases they submitted, if I may

4    just mention that.  The case No. 1 they submitted, I wasn't

5    able to find it in the government listing.

6         The case No. 2, it deals with U.S. person that

7    actually exported the item, and, your Honor, courts have made a

8    distinction between actually exporting item and trying to

9    export for purpose of sentencing.

10        Case No. 3 involved 12 defendants.  In addition to

11   IEEPA, there's also violation of IECA, so it's not just IEEPA,

12   and also involved export.  Your Honor, the case No. 2 involves

13   $10 million of the shipment that has already been made.  In

14   this case, there's no allegation even the amount of the

15   transaction involved.  The case No. 3 again is a list of agent

16   about the case $168,000 forfeited in that case.  When there's a

17   forfeiture, that means there was a benefit to the company;

18   there was a transaction involved.  In this case, there was no

19   benefit to the plaintiff.  There was no transaction involved.

20        Your Honor, if I may go through all the cases, case

21   No. 4 and three is the same thing, just repeating twice for two

22   different defendants.

23        Case No. 5 involves again shipment, they actually

24   shipped items to Iran.  And the person got 30 months in prison,

25   I believe, on that.

24

DapWtamC

1            The case No. 6, they have as a military and commercial

2    aircraft involves $500,000 of actual shipment and forfeiture.

3    And they also involved U.S. persons.

4            Case No. 8, they have also involved U.S. person,

5    actually exported the items, and it was involving the

6    airplanes, CF65 aircraft engines.  Those are not the same kind

7    of bolt and bearing we are talking about in this case.  This is

8    a low-level, no-money transaction has there ever been taking

9    place in this case.  Mr. Tamimi never paid a penny or put it

10   over for these items.  He just sent his list.  The contact from

11   New York, he was contacting him.  He was contacted and asked

12   for the list and all Tamimi did in this case, just send the

13   list, and he's being prosecuted.  He's in jail for just sending

14   a list.

15           There's been no proffer.  There is no proof my client

16   works for the Iranian government, he has connection with the

17   Iranian government.  He's just trying to get the part for the

18   Panha so they can repair the helicopters owned by Red Crescent.

19   There's no lying here.  There's no falsification here, and I

20   would like to see if the government has anything else.

21           We believe in this case as recommended by the

22   probation office is one year one day, honestly is more than

23   enough for this person.  I cited the case of the doctor that

24   was charged with 33 counts in Northern District of California.

25   33 counts, he pled to one.  He actually exported.  The court

DapWtamC

```
1    gave him 36 months' probation and allowed him to go back to
2    Iran.  He did not spend more than ten days in jail, which was
3    before he posted bond.  We have many, many cases of same kind.
4    They got either six months or they have been released on
5    probation or maximum they got one year and one day.
6              THE COURT:  But many of those involved computer parts,
7    or things like that, that don't have as clear a military use.
8              MR. AMINI:  Your Honor, that's what I'm really trying
9    to say.  The government never gave us the list what the parts
10   are that they, if they have the bearings, the bolt.
11             THE COURT:  Doesn't matter.  They're parts for a
12   helicopter.  Everyone agrees on that.
13             MR. AMINI:  Your Honor, it makes really big
14   difference, the technology.  Are they trying to transfer the
15   technology, or these are just the bolt and the bearing?  And
16   it's also for whom.  Who is the owner?  We are standing here
17   again and saying the owner of the helicopter that the bearings
18   was for was Red Crescent, but the repair company is the same
19   repair company.
20             (Defendant conferred with counsel)
21             MR. AMINI:  He's saying I'm swearing this is the case.
22             THE COURT:  Okay.
23             MR. AMINI:  If your Honor would give us additional
24   time for briefing, I will review what the government actually
25   is alleging he had admitted to and we'll get proper translation
```

DapWtamC

```
 1          of it and brief it to the Court before final sentence.

 2                    THE COURT:  Mr. Halperin.

 3                    MR. HALPERIN:  Judge, again, we don't see any need for

 4          additional briefing.  This has been produced in discovery and

 5          counsel's had it for months.  Counsel just said Tamimi never

 6          lied in his postarrest interviews, and we agree that he did not

 7          lie by failing to mention, since he never mentioned the Iranian

 8          Red Crescent during his postarrest interviews.  We believe he

 9          was being truthful when he talked about how he was acquiring

10          the parts for an official connected with the Iranian Air Force.

11                    I'd also point out, as I said a few minutes ago, the

12          proof of this point that he was trying to acquire the materials

13          for the Air Force is not limited to his postarrest interviews.

14          It's also in at least two different recorded conversations as

15          we set forth on page four and page six of our sentencing

16          submission.

17                    No. 1, in paragraph two, on page four, "On November

18          15, 2011, Tamimi said that he had just met with Air Force

19          personnel and that they were interested in individual one's

20          parts and would submit a parts list."

21                    No. 2, on page 6, paragraph 11, "On March 7, 2012,

22          Tamimi told individual one that one of the coconspirators was

23          with Tamimi in his office in Tehran, and Tamimi said he had

24          just told that coconspirator that the goods were for the

25          military but that on the carton it did not reveal that the
```

DapWtamC

1    goods were for the military," again, showing the falsification

2    of the documents.

3        Finally, in terms of probation's recommendation, we

4    vigorously but respectfully disagree with probation's

5    recommendation in this case of a year and a day.  We would note

6    that the only 3553(a) factor that probation even discussed in

7    their justification was the supposed family circumstances of

8    the defendant.  That is one small factor that ignores the

9    nature and circumstance of the offense, the need to impose just

10   punishment, and, of course, the need for deterrence.  And, as

11   we said in our submission, assuming arguendo that the claims

12   about the family situation are true, these are hardly egregious

13   or extremely tragic family circumstances that would justify an

14   enormous departure from the guideline range.

15       We submit that when balancing as to everything else a

16   guideline range sentence is entirely appropriate in this case.

17   Thank you, your Honor.

18       THE COURT:  Thank you.  Did you want to add something

19   else before we take a brief recess?

20       MR. AMINI:  Your Honor, not mentioning Red Crescent in

21   his interview, that doesn't mean he lied.  If he was not asked,

22   then he did not say, that is not a lie.  The government is

23   making argument that he lied, he did not say.  If he was not

24   asked and he did not say this is for Red Crescent, that is not

25   a lie.  If he actually said for Iranian Air Force, then he

DapWtamC

changes his mind, then that is a lie.  He never said this is
for the Iranian Air Force, and, your Honor, I have all these
CDs and DVDs, a couple of them they just cited.  Honestly, I
have 16 of them.  I've reviewed them.

        I want to have opportunity to go back and get actual
translation of those calls for those two days with the
affidavit submitted to actually show what was mentioned because
I want to make sure the translation was done properly.  They
are relying on two telephone calls and saying he admitted to
the Air Force.  I want to make sure that admission is here,
your Honor, before you impose the sentence, because that is
critical, and I do have it.  I just have to go and look, and we
get affidavit filed with the actual translation so your Honor
know what was that telephone call all about, or the government
can show it to today in the court so we see what was the
admission.

        THE COURT:  I'm going to take a five-minute recess.

        (Recess)

        THE COURT:  I'm going to postpone the ultimate
sentencing decision because I would like to at least see some
of the evidence on these issues.  If I could focus on a couple
of issues, I mean, the main issue I have is I want to learn
more about what his purpose was in entering into this
conspiracy.  Was it really for Red Crescent, was it for a
military connected or government organization, and the specific

DapWtamC

1    things I'm thinking about are the comment about Mohammad is

2    Basij, the question about Panha and anything about whether that

3    might be connected to the Red Crescent, and then, most

4    basically, any statements tending to show that he knew or

5    understood that these were for the military or for the

6    government.  What I have in mind is I would like to see, for

7    example, F.B.I. 302 reports, the various things that are

8    highlighted in the brief, so that I have some understanding of

9    that.

10                MR. HALPERIN:  Your Honor, that certainly makes sense,

11    and we were speaking to the agents during the break and they

12    were saying that by Tuesday, we could have, we've already

13    produced and prepared, I guess, official F.B.I. summaries of

14    two calls in issue, November 15, '11, and March 7, 2012, but by

15    probably the end of the day Monday, early Tuesday, we can have

16    official verbatim transcripts of those calls produced to the

17    Court and defense counsel, along with the recording which has

18    already been produced to defense counsel probably close to a

19    year ago in discovery, but we will produce those as well.

20                THE COURT:  When you say recordings, those are of

21    interviews?

22                MR. HALPERIN:  No, your Honor.  I'm sorry.  We have

23    recordings of the actual conversations from November 2011 and

24    March 2012.

25                THE COURT:  So we'll be able to get actual

DapWtamC

1   transcripts?

2          MR. HALPERIN:  Yes, because they're in Farsi.

3          THE COURT:  And the four days of interviews were not

4   recorded, were they?

5          MR. HALPERIN:  Correct.  They were not recorded.  We

6   have F.B.I. 302s that we can produce to the Court.  I guess

7   what we'd ask in the first instance, before setting an

8   official, full-blown Fatico hearing is if the government, by,

9   let's say, next Tuesday can produce those things that the Court

10  has asked for to the Court and defense counsel, including the

11  underlying recordings of those two key conversations, that may

12  satisfy everyone's concerns on these points.

13         THE COURT:  Mr. Amini.

14         MR. AMINI:  Your Honor, just getting an affidavit from

15  Panha or from Red Crescent that was their helicopters or they

16  owned helicopters, is that something the Court would entertain?

17  Is the U.S. interested in Tehran, they own the helicopters,

18  they can list what they had and the repair shop in Panha.

19         MR. HALPERIN:  Your Honor, based on our conversations

20  with the agents, I don't think we dispute that Panha may also

21  provide materials to the Red Crescent, so I don't see what

22  purpose that has.

23         THE COURT:  What is Panha, what type of entity?

24         MR. AMINI:  It's just a repair shop, your Honor, a

25  repair shop for helicopters, but actually, I don't know if it's

DapWtamC

1    privately owned.  They have a Web site and I can get the link

2    and I can also in briefing, therefore, provide to the Court so

3    the Court can see what kind of organization they are.  But I

4    heard from the defendant it's an arm of the Air Force, but

5    actually it is a repair shop where all the even private

6    helicopters because there is no other shop for helicopters to

7    repair.

8              THE COURT:  You don't need to get an affidavit.  If

9    there's something on the Web site or something like that,

10   that's fine.

11             Ms. Surratt.

12             MS. SURRATT:  I was going to chime in some information

13   we know about Panha, but unless the Court wants to hear it now,

14   we can address it later.

15             THE COURT:  You can address it later.  In terms of

16   timing, you said you can submit something next week?

17             MR. HALPERIN:  By next Tuesday, your Honor.

18             THE COURT:  Would you be able to respond the following

19   week?

20             MR. AMINI:  Yes, your Honor.  Seven to ten days.

21             THE COURT:  Whenever you receive the government's

22   submission, is a week enough, or do you want to have ten days

23   for that?

24             MR. AMINI:  I just don't know my schedule right now,

25   your Honor.  I'm saying ten days, if I can submit something in

DapWtamC

```
 1    four days, I will do so.
 2              THE COURT:  At that point, I guess we'll need to
 3    schedule, we should schedule a further date for sentencing,
 4    since I'm postponing it.  How much time do you think?  Should
 5    we do it in three weeks, or so?
 6              MR. HALPERIN:  I'd say no more than three weeks, your
 7    Honor.
 8              THE COURT:  Is that okay?
 9              MR. AMINI:  Yes, your Honor.  I have oral argument in
10    Ohio end of November.  I just want to make sure it's not that
11    day.
12              THE DEPUTY CLERK:  November 25.
13              MR. AMINI:  November 22.
14              THE COURT:  That's your argument?
15              MR. AMINI:  No.  That day is open.  Mine is 25th, your
16    Honor.
17              THE COURT:  How about the 15th?
18              MR. HALPERIN:  That works for the government, your
19    Honor.
20              MR. AMINI:  15th.
21              MR. HALPERIN:  Judge, we'd request, if at all
22    possible, we do a Friday closer to the morning or middle of the
23    day rather than late afternoon.
24              THE COURT:  Could we do 9:30 on the 15th?
25              MR. AMINI:  9:30.
```

DapWtamC

```
1              THE COURT:  Is that possible?

2              MR. HALPERIN:  That works for the government, your

3     Honor.

4              THE COURT:  We'll schedule it for 9:30 on the 15th.

5     I'll look at the submissions and then I guess I'll tell the

6     parties in a notice or an order whether I would like to hear

7     any live testimony.  I may not, based on what's submitted, but

8     if I do, I'll let the parties know.

9              MR. AMINI:  Okay.

10             THE COURT:  Is that okay?

11             MR. HALPERIN:  That works.

12             THE COURT:  Sentencing is adjourned to November 15,

13    2013, at 9:30 a.m.

14             Anything else for today?

15             MR. HALPERIN:  Not from the government, your Honor.

16             MR. AMINI:  Thank you, your Honor.

17             THE COURT:  Thank you.

18             (Adjourned)

19

20

21

22

23

24

25
```